## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,<br><br>       Plaintiff,<br>v.<br><br>SFC ENTERPRISES LLC F/K/A SILVER SNAFFLE, LLC, D/B/A ST. CHARLES FARMS & EQUESTRIAN CENTER, ASHLEY RATAY, and ROBERT SHOCKLEY, JR.,<br><br>       Defendants. | Case No. 1:18-cv-4495 |

## **COMPLAINT**

American Bankers Insurance Company of Florida ("American"), for its Complaint against Defendants SFC Enterprises LLC F/K/A Silver Snaffle, LLC, D/B/A St. Charles Farms & Equestrian Center ("SFC"), Ashley Ratay ("Ratay"), and Robert Shockley, Jr. ("Shockley"), states as follows:

## **NATURE OF ACTION**

1. In this action, American seeks declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202, regarding its rights, duties, and obligations under a farmowner policy it issued to SFC with respect to the lawsuit, *Robert Shockley, Jr. v. SFC Enterprises LLC F/K/A Silver Snaffle, LLC, D/B/A St. Charles Farms & Equestrian Center, et al.*, Case No. 2017-L-005912, currently pending in the Circuit Court of Cook County, Illinois – Law Division (the "Underlying Lawsuit").

2. This action seeks to resolve an actual controversy among and between the parties regarding insurance coverage for the Underlying Lawsuit under the subject policy, which is described below.

## THE PARTIES

3. American is a Florida corporation with its principal place of business in Florida. American is a citizen of the state of Florida.

4. SFC is an Illinois limited liability company whose manager and member, Casey Ratay, is domiciled in the state of Illinois. SFC is a citizen of the state of Illinois

5. Ashley Ratay is domiciled in the state of Illinois. Ratay is a citizen of the state of Illinois.

6. Shockley is domiciled in the state of Illinois. Shockley is a citizen of the state of Illinois.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a)(1), because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of Illinois and § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim for which coverage is in dispute occurred in this District.

9. An actual justiciable controversy exists between and among the parties that can be determined by an order of this Court.

10. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties under the policy of insurance at issue, and to give such other and further relief as may be necessary to enforce the same.

## FACTUAL BACKGROUND

### *The Underlying Lawsuit*

11. On September 26, 2017, Shockley filed his Amended Complaint in the Underlying Lawsuit against Ratay and SFC. A copy of the Amended Complaint is attached hereto as Exhibit A.

12. The Amended Complaint is the operative complaint in the Underlying Lawsuit.

13. Shockley's initial Complaint did not name SFC as a defendant or contain allegations regarding SFC.

14. The Amended Complaint alleges that on or about November 11, 2016, Ratay transported horses and a golf cart owned by SFC to Barrington Hills Riding Center ("BHRC") in the Village of Barrington Hills, Illinois.

15. The Amended Complaint alleges that Ratay was responsible for supervising persons riding SFC's horses at BHRC, and was supervising the riders while operating SFC's golf cart, while in the course and scope of her employment with, and in furtherance of the business of, SFC.

16. The Amended Complaint alleges that Shockley was a passenger in the golf cart operated by Ratay when Ratay chased a horse and drove the golf cart off a mowed path and onto a grassy field.

17. The Amended Complaint alleges that Ratay was driving too fast when the golf cart hit uneven ground causing Shockley to be ejected from the golf cart and land on the ground.

18. The Amended Complaint alleges that Ratay drove over Shockley's leg after he was ejected from the golf cart.

19. The Amended Complaint seeks damages for the alleged injuries, pain and anguish, lost time, and medical expenses Shockley sustained due to being ejected from, and driven over by, the golf cart.

20. Count I – Negligence of the Amended Complaint seeks damages in excess of $50,000 from Ratay based on her alleged negligence.

21. Count II – Respondent Superior of the Amended Complaint seeks damages from SFC in excess of $50,000 based on Ratay's alleged negligence.

*The Policy*

22. American issued to SFC Farmowner Policy No. FSL414210011, effective June 1, 2016 to June 1, 2017 (the "Policy"). A certified copy of the Policy is attached hereto as Exhibit B.

23. The Principal Coverages in the Commercial Liability Coverage of the Policy include Coverage L – Bodily Injury Liability Property Damage Liability, which provides, that:

> We pay all sums which an "insured" becomes legally obligated to pay as "damages" due to "bodily injury" or "property damage" to which this insurance applies. The "bodily injury" or "property damage" must be caused by an "occurrence" and arise out of the ownership, maintenance, or use of the "insured premises" or operations that are necessary or incidental to the "insured premises".
>
> This insurance applies only to "bodily injury" or "property damage" which occurs during the policy period.

(Ex. B at 64.)

24. The Supplemental Coverages in the Commercial Liability Coverage of the Policy are subject to all the "terms" of the Principal Coverages, and include Motorized Vehicles and Watercraft coverage, which provides, that:

> We pay for "bodily injury" or "property damage" arising out of:
>
> \* \* \*

4

    2.    a "motorized vehicle" which is designed only for use off public roads and which is used to service the "insured premises"

    (However, this coverage does not apply to "bodily injury" or "property damage" which results from a "motorized vehicle" while used for recreational purposes away from the "insured premises".);

*   *   *

(Ex. B at 65.)

    25.    The Defense Coverage in the Commercial Liability Coverage of the Policy provides, in relevant part, that: "'We' have the right and duty to defend a suit seeking 'damages' for 'bodily injury' or 'property damage' which may be covered under the Commercial Liability Coverage." (Ex. B at 65.)

    26.    Exclusion 6 to the Commercial Liability Coverage of the Policy provides that:

"We" do not pay for "bodily injury" or "property damage" that arises out of the ownership, operation, maintenance, use, occupancy renting, loaning, entrusting, supervision, or "loading or unloading" of:

*   *   *

    b.    a "motorized vehicle", . . .

*   *   *

except as provided under Supplemental Motorized Vehicles and Watercraft Coverage.

*   *   *

(Ex. B at 67.)

    27.    The Definitions to the Commercial Liability Coverage of the Policy provide that:

    1.    The words "you" and "your" mean the person, persons, or organization named as the insured on the "declarations".

    2.    The words "we", "us", and "our" mean the company providing this Commercial Liability Coverage.

5

\*     \*     \*

6. "Farming" means the ownership, maintenance, or use of premises for the production of crops or the raising or care of livestock, including all necessary operations. "Farming" also includes the operations of roadside stands and farm markets maintained principally for the sale of the "insured's" own farm products, but it does not include other retail activities.

7. "Insured" - - If shown on the "declarations" as an Organization (other than a Partnership or Joint Venture), "insured" means "you" and all of "your" executive officers and directors, but only while acting within the scope of their duties as such. It also includes "your" stockholders, but only for their liability as such.

\*     \*     \*

    c. "your" employees, for acts within the scope of their employment by "you" (this does not include "your" executive officers). None of these employees are "insureds" for:

        (1) injury to "you" or a fellow employee; or

        (2) "property damage" to property owned by, rented to or loaned to employees, or any of "your" partners or members and their spouses (if "you" are a joint venture or a partnership).

    d. persons other than "your" employees, including another person or an organization legally liable for the conduct of such persons, but only:

        (1) for liability arising out of the use or care of vehicles or animals owned by "you" and to which this Commercial Liability Coverage applies; and

        (2) if there is no other insurance covering the liability available to them.

\*     \*     \*

8. "Insured Premises" means the location shown on the "declarations" and operated or used for "farming" purposes. This includes buildings used as residences, grounds, and all adjoining access ways.

\*     \*     \*

11. "Motorized Vehicle" means a self-propelled land or amphibious vehicle regardless of method of surface contact. This includes parts and equipment.

This does not include vehicles that are designed and used to assist the handicapped and not required to be licensed for road use.

\* \* \*

17. "Terms" means all provisions, limitations, exclusion, conditions, and definitions that apply to this Commercial Liability Coverage.

\* \* \*

((Ex. B at 61-63.)

## COUNT I

*No Coverage For SFC and Ratay Because The Commercial Liability Coverage Insuring Agreements Are Not Implicated*

28. American repeats and realleges the allegations of Paragraphs 1 through 27 as if fully set forth herein.

29. To implicate the relevant insuring agreements of the Commercial Liability Coverage for "bodily injury" under the Policy (whether under Coverage L or the Supplemental Coverages), the "bodily injury" must arise out of the ownership, maintenance, or use of the "insured premises" or operations that are necessary or incidental to the "insured premises."

30. The Policy defines "insured premises" as the location shown on the "declarations" and operated or used for "farming" purposes, including buildings used as residences, grounds, and all adjoining access ways.

31. The location of the insured premises shown on the "declarations" of the Policy is "42W 690 NORTH AVE, ST CHARLES, IL 60175."

7

32. The Underlying Lawsuit seeks damages for injuries arising out of Ratay's and/or SFC's operation, maintenance, use, occupancy, loaning, entrusting and/or supervision of the golf cart at BHRC.

33. BHRC is not the location of the "insured premises" shown on the "declarations," or a building used as a residence, the grounds, or an adjoining access way to such location.

34. The activities at BHRC allegedly resulting in Shockley's injuries were not operations necessary or incidental to the "insured premises."

35. Therefore, American owes no duty to defend or indemnify Ratay or SFC, or to pay Shockley on behalf of Ratay or SFC, with respect to the Underlying Lawsuit because it does not implicate the insuring agreements of the Commercial Liability Coverage for "bodily injury".

**COUNT II**

*Exclusion 6 Applies To Preclude Coverage For SFC and Ratay*

36. American repeats and realleges the allegations of Paragraphs 1 through 27 as if fully set forth herein.

37. Exclusion 6 to the Commercial Liability Coverage of the Policy precludes coverage, in relevant part, for "bodily injury" that arises out of the ownership, operation, maintenance, use, occupancy, loaning, entrusting, or supervision of a "motorized vehicle," except as provided under Supplemental Motorized Vehicles and Watercraft Coverage.

38. The Underlying Lawsuit seeks damages for injuries arising out of Ratay's and/or SFC's operation, maintenance, use, occupancy, loaning, entrusting and/or supervision of the golf cart at BHRC.

39. The Policy defines "motorized vehicle" as a self-propelled land or amphibious vehicle regardless of method of surface contact, not including vehicles that are designed and used to assist the handicapped and not required to be licensed for road use.

40. The golf cart from which Shockley was ejected is a self-propelled land vehicle.

41. The golf from which Shockley was ejected is not a vehicle that is designed and used to assist the handicapped and not required to be licensed for road use.

42. The golf cart from which Shockley was ejected constitutes a "motorized vehicle" as defined in the Policy.

43. The Supplemental Motorized Vehicles and Watercraft Coverage to the Commercial Liability Coverage of the Policy provides coverage, in relevant part, for "bodily injury" arising out of a "motorized vehicle" which is designed only for use off public roads and which is used to service the "insured premises."

44. The golf cart from which Shockley was ejected is designed for use off public roads.

45. The Policy defines "insured premises" as the location shown on the "declarations" and operated or used for "farming" purposes, including buildings used as residences, grounds, and all adjoining access ways.

46. The location of the insured premises shown on the "declarations" of the Policy is "42W 690 NORTH AVE, ST CHARLES, IL  60175."

47. BHRC is not the location of the "insured premises" shown on the "declarations," or a building used as a residence, the grounds, or an adjoining access way to such location.

48. The golf cart from which Shockley was ejected was not being used to service the "insured premises."

49. The Underlying Lawsuit seeks damages for injuries that do not arise out of a "motorized vehicle" used to service the "insured premises."

9

50. The Underlying Lawsuit does not implicate the Supplemental Motorized Vehicles and Watercraft Coverage.

51. Therefore, to the extent that the Policy implicates the Commercial Liability Coverage of the Policy (which American denies), American owes no duty to defend or indemnify Ratay or SFC, or to pay Shockley on behalf of Ratay SFC, with respect to the Underlying Lawsuit because of the application of Exclusion 6.

## **COUNT III**

### *Ratay Is Not An Insured With Respect To The Underlying Lawsuit*

52. American repeats and realleges the allegations of Paragraphs 1 through 27 as if fully set forth herein.

53. Under the Commercial Liability Coverage of the Policy, American agrees to pay certain sums which an "insured" becomes legally obligated to pay as "damages" and to defend "suits" seeking covered "damages."

54. The Policy defines "insured," in relevant part to include: (a) SFC's employees for acts within the scope of their employment by SFC and (b) persons other than SFC's employees, but only (1) for liability arising out of the use or care of vehicles or animals owned by SFC and to which the Commercial Liability Coverage applies and (2) if there is no other insurance covering the liability available to them.

55. At the time of the events described in the Amended Complaint, Ratay was not an employee of SFC.

56. Alternatively, to the extent that Ratay was an employee of SFC at the time of the events described in the Amended Complaint, Ratay was not acting within the scope of her employment by SFC.

57. Ratay's potential liability for the Underlying Lawsuit does not arise out of the use or care of vehicles or animals owned by SFC to which the Commercial Liability Coverage of the Policy applies.

58. Therefore, to the extent that the Policy otherwise provides coverage for the Underlying Lawsuit (which American denies), American owes no duty to defend or indemnify Ratay, or to pay Shockley on behalf of Ratay, with respect to the Underlying Lawsuit because Ratay is not an "insured."

WHEREFORE, American requests a judgment in its favor against SFC, Ratay, and Shockley, on all Counts of American's Complaint for Declaratory Relief, including the following relief:

   a. A declaration that the Policy does not provide coverage for SFC or Ratay in connection with the Underlying Lawsuit;

   b. A declaration that Ratay is not an insured under the Policy as to the Underlying Lawsuit;

   c. A declaration that American has no duty under the Policy to defend Ratay or SFC in the Underlying Lawsuit;

   d. A declaration that American has no duty under the Policy to indemnify Ratay or SFC in connection with the Underlying Lawsuit;

   e. A declaration that American has no duty under the Policy to pay any person, including Shockley, for sums which Ratay or SFC may be legally obligated to pay such person as a result of the Underlying Lawsuit

   f. Any such other and further relief for American as this Court deems just and appropriate.

Dated: June 27, 2018  Respectfully submitted by,

/s/  Christopher D. Blum

Richard H. Nicolaides, Jr.
Illinois State Bar No. 6207460
rnicolaides@nicolaidesllp.com
Christopher D. Blum
Illinois State Bar No. 6302424
cblum@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 South Wacker, Suite 2100
Chicago, IL 60606
Ph:   312-585-1400
Fax: 312-585-1401
*Attorneys for American Bankers Insurance Company of Florida*