IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18 C 4495 |
| v. | ) ) ) | Judge Robert W. Gettleman |
| SFC ENTERPRISES LLC, f/k/a Silver Snaffle, LLC, d/b/a St. Charles Farms & Equestrian Center, ASHLEY RATAY, and ROBERT SHOCKLEY, JR., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Robert Shockley, Jr., sued defendants Ashley Ratay and her employer, SFC Enterprises LLC, f/k/a Silver Snaffle, LLC, d/b/a St. Charles Farms & Equestrian Center, in the Circuit Court of Cook County, Illinois, seeking damages for personal injuries Shockley sustained when he was thrown from and then allegedly run over by a golf cart driven by Ratay. Shockley v. SFC Enterprises, et al., No. 2017 L 5912. (the "underlying complaint"). In the instant case, plaintiff American Bankers Insurance Company of Florida has sued defendants SFC, Ratay, and Shockley, seeking a declaration that it has no duty to defend or indemnify either SFC or Ratay from Shockley's claims under a "farmowner policy" issued to SFC. Because Ratay filed a suggestion of bankruptcy, the case was stayed as to her. The bankruptcy case was dismissed, but although served, neither Ratay nor SFC appeared or answered, leaving Shockley as the only defendant participating in the case. Plaintiff has moved for summary judgment on the duty to defend, and Shockley filed a cross-motion for summary judgment. For the reasons

described below, plaintiff's motion for summary judgment is granted and Shockley's motion for summary judgment is denied.

## BACKGROUND

Plaintiff issued a farmowner policy to SFC effective June 1, 2016 through June 1, 2017. The policy provides coverage for bodily injury caused by an 'occurrence' and arising out of ownership, maintenance, or use of the 'insured premises' or operations that are necessary or incidental to the insured premises. The "insured premises" is defined as SFC's "North Avenue premises, and operated or used for farming purposes." Farming is defined as the ownership, maintenance or use of the premises for the production of crops and raising of livestock, including all necessary operations.

The policy also contains a declaration indicating that it "is extended to cover the following activities in addition to farming" and that farming is intended to include:

| Classification | Premium |
|---|---|
| Stables, boarding . . . | 855 |
| Riding Clubs & Academies | 228 |
| Saddle Animals, Comm'l | 289 |
| Instructors Liab | 134 |

As noted, Shockley was injured when he was ejected and allegedly run over by a golf cart driven by Ratay. The alleged injury took place at the Barrington Hills Riding Center, which all parties agree is miles from the North Avenue premises. According to the underlying complaint, at the time of the incident, Ratay was operating the golf cart owned by SFC in furtherance of SFC's business, and that Ratay was responsible for supervising individuals riding SFC's horses.

**DISCUSSION**

The parties have filed cross-motions for summary judgment. Summary judgment is appropriate when the movant shows there is no dispute as to any material fact if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(s); Celotex v. Catrett, 477 U.S. 317, 322 (1986). A moving party can prevail on summary judgment by either pointing to undisputed facts supported by the record that demonstrate that it is entitled to judgment, or it can point to an absence of evidence of an essential element of the responding party's claim or affirmative defense. Id. Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (1990). The court does not weigh conflicting evidence or make credibility determinations, but considers the evidence as a whole and draws all inferences in the light most favorable to the nonmoving party. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (186). The nonmoving party, must, however, do more than simply "show there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be some evidence on which the jury could reasonably find for the [nonmoving] party." Anderson, 477 U.S. at 252; see Modrowski v. Pigatto, 712 F.3d 1166, 1167 (7th Cir. 2003) (The court must enter summary

judgment against a party that "does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question.")).

The parties agree that Illinois law governs the instant dispute. Under Illinois law, whether an insurer has a duty to defend is determined by comparing the factual allegations of the underlying complaint to the terms of the policy. "Ordinarily, in a declaratory judgment action on an insurer's duty to defend the insured, courts follow the eight-corners rule, comparing the four corners of the underlying complaint with the four corners of the insurance contract. If the facts alleged in the underlying complaint fall within, or <u>potentially</u> within, the policy's coverage, the insurer's duty to defendant is triggered." <u>Pekin Ins. Co. v. St. Paul Lutheran Church</u>, 2016 IL App. (4th) 150966, ¶ 63 (4th Dist. 2016) (emphasis in original, and internal quotations and citations omitted). The court may, however, consider extrinsic evidence so long as the factual matters do not bear upon issues in the underlying litigation. <u>Id</u>.

The court's primary function when construing the language of an insurance policy is to give effect to the intent of the parties as expressed by the words of the policy. <u>Central Ill. Light Co. v. Home Ins. Co.</u>, 213 Ill.2d 141, 153 (2004). "An insurance policy, like any contract, is to be construed as a whole giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." <u>Id</u>. If the policy language is clear and unambiguous, it is to be given its plain, ordinary, and popular meaning. If, however, the words used are susceptible to more than one reasonable interpretation, the ambiguity must be resolved in favor of coverage. <u>Rich v. Principal Life Ins. Co.</u>, 226 Ill.2d 359, 371 (2007).

In the instant case, the parties agree that the standard language of the farmowner policy at issue restricts coverage to on-site risks associated with traditional crop growing and harvesting; "farming" activities. The standard language includes Exclusion No. 13, which provides:

> 13. "We" do not pay for "bodily injury" or "property damage" arising out of the ownership, use, or maintenance of: . . .
>
> (c) saddle animals while they are rented to others by or for an "insured."

The policy also contains an endorsement indicating that "the commercial liability coverage (Farm Premises) is amended by the following:

> Under Exclusions That Apply to Bodily Injury and/or Property Damage, Exclusion 13 does not apply with respect to the activities described on the "declarations."

The activities described on the declarations to which the endorsement refers are the listed additional activities included in the definition of farming: "Stables, Boarding; Riding Clubs & Academies; Saddle Animals, Comm'l; and Instructors Liability."

Based on this language, Shockley argues that it is "reasonable to interpret the policy language to provide coverage for risks arising from rides involving the rental of SCF's horses to riders being trained and supervised by an SFC instructor held <u>outside</u> of the 'insured premises'" (emphasis added). To support this argument he relies on <u>Indiana Ins. Co. v. Royce Realty and Management, Inc.</u>, 2013 Ill. App. (2d) 121184 (2d Dist. 2013), in which the court rejected an argument that coverage was restricted to risks arising out of the use of the premises as included in an endorsement. The <u>Royce</u> court's reasoning, however, does not apply to the instant case because, that court concluded that the policy at issued was a commercial general liability policy

5

("CGL") providing coverage for all risks associated with the insured business operations.  Id. at ¶ 28.

Unlike in Royce, the instant policy is not a CGL but a farmowner policy which, like a homeowner policy, is limited to occurrences that arise out of the ownership, maintenance, or use of the insured premises, or are operations that are necessary or incidental to the insured premises. Use of the insured premises includes the listed activities, but nothing in the policy language suggests that activities miles from the insured premises are covered.  The policy in question does not cover SFC's business operations, only those operations on site.  It is not a CGL because, unlike a standard CGL, the farmowner policy limits coverage to an express geographic location.  Try as he might, Shockley cannot get around this limitation.  Consequently, because Shockley's injuries do not arise out of an operation incidental to the insured premises, plaintiff has no duty to defendant SFC or Ratay in the underlying action.  Consequently, plaintiff's motion for summary judgment is granted and Shockley's motion for summary judgment is denied.

## CONCLUSION

For the reasons stated above plaintiff's motion for summary judgment [Doc. 31] is granted and Shockley's motion for summary judgment [Doc. 36] is denied.

**ENTER:** **February 18, 2020**

_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**